**Case Numbers: 21-55118; 21-55157**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

———————————————————————

CHRISTOPHER GARNIER, KIMBERLY GARNIER,

Plaintiffs-Appellees

v.

MICHELLE O'CONNOR-RATCLIFF, T.J. ZANE,

Defendants-Appellants.

———————————————————————

**DEFENDANTS'/APPELLANTS' ANSWER BRIEF ON REMAND**

———————————————————————

Appeal from Judgment and Post-Judgment Orders
Honorable Roger T. Benitez
United States District Court – Southern Division
Case No: 3:17-cv-02215-BEN-JLB

———————————————————————

ARTIANO SHINOFF
Daniel R. Shinioff, Esq. (SBN 99129)
Jack M. Sleeth Jr., Esq. (SBN 108638)
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Telephone: (619) 232-3122
Attorneys for Defendants/Appellants
Michelle O'Connor-Ratcliff, T.J. Zane

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................5

II.   ANALYSIS .........................................................................................6

    A.    The *Lindke* Rule Requires "Actual" Authority .....................................6

        1.    These Board Members Did Not Possess "Actual Authority" to speak on the School District's Behalf.......................................8

           a.  Members Have No Statutory Authority Outside of a Meeting...8

    B.    The District Did Not Authorize Them to Speak for It .......................11

    C.    These Trustees Created These Sites before They Were Elected.........15

    D.    The *Lindke* Rule Requires Evidence the Trustees "Purported" to Exercise Authority from the District...................................................16

        • Fulfill Legal Responsibilities …………………………………...17
        • When an Account Belongs to a Political Subdivision………..17
        • Designates the Space as an Official Channel………………...18
        • Expressly Invoked Legal Authority…………………………..18
        • Content with Immediate Effect or Not Available Elsewhere…………………………………………………..19
        • Appeared on a Page Staff Could Access…………………......20

III.  CONCLUSION ..................................................................................21

IV.   CERTIFICATION OF WORD COUNT AND SERVICE ..............................23

# **TABLE OF AUTHORITIES**

**Cases**

*El Camino Community Coll. Dist. v. Superior Ct.*, 173 Cal.App.3d 606, 616-617 (1985) ................................................................................................9

*Garnier v. O'Connor-Ratcliff* (9th Cir. 2022) 41 F.4th 1158, 1172, ftnt 9........ 12,16

*Jett v. Dallas Independent School District*, 491 U.S. 701 .......................................10

*Lindke v. Freed* 601 U.S. 187 (2024) ................ 5,6,7,8,10,11,14,16,17,18,19,20,21

*Miller v. McKinnon*, 20 Cal.2d 83, 89–90 (1942) ....................................................9

*Santa Monica Unified School District v. Persh*, 5 Cal. App. 3d 945, 952 (1970) ....9

**Statutes**

California Education Code Section 221.6................................................................10

California Education Code Section 221.9 ...............................................................10

California Education Code Section 221.61..............................................................10

California Education Code Section 35163................................................................8

California Education Code Section 35164................................................................8

California Education Code Section 35172(c) ...........................................................9

California Government Code Section 54950 ............................................................9

California Government Code Section 54951 ............................................................9

California Government Code Section 54952 ............................................................9

California Government Code Section 54952.2..........................................................9

California Government Code Section 54952.6..........................................................9

California Government Code Section 54953 ............................................................9

California Government Code Section 54954 ............................................................9

California Government Code Section 53908 ..........................................................10

California Government Code Section 54954.2........................................................10

California Government Code Section 54956 ..........................................................10

State Action Under Section Code 1983 .......................................................... 6,10,16

**Other Authorities**

BB 9000(a), https://perma.cc/A3EH-7JYW .........................................................12

**Rules**

Board Policy 1100....................................................................................................13

Board Policy 1112....................................................................................................13

Board Policy 1113....................................................................................................13

Board Policy 1114....................................................................................................13

**Regulations**

34 Code of Federal Regulation Section 106.45(b)(10)............................................10

34 Code of Federal Regulation Section 106.8(b)(2)................................................10
Administrative Regulation 1114 ....................................................................... 12,13
Administrative Regulation 1113 .........................................................................13
Administrative Regulation 1114(a), https://4.files.edl.io/37e4/05/25/23/153223-
    6e3d46a8-3f82-49fe-b98e-a9f098e40f04.pdf .......................................................14

## I.    INTRODUCTION

On remand from the Supreme Court in this social-media First Amendment case, this Court instructed the parties to file a supplemental brief concerning the impact of the Supreme Court's opinion in *Lindke v. Freed* 601 U.S. 187 (2024) ("*Lindke*") on this case.  This Answering Brief of Respondent/Appellant Michelle O'Connor-Ratcliff and T.J. Zane addresses the similarities and distinctions between this case and the *Lindke* case and responds to the positions of the Petitioner/Appellees.

In the *Lindke* case the Supreme Court held that an official who prevents someone from commenting on the official's social-media page "engages in state action *only* if the official both (1) possessed actual authority to speak on the State's behalf on a particular matter, and (2) purported to exercise that authority when speaking in the relevant social-media posts." *Lindke* at 187 (Italics added). Consequently, the questions now are whether these two school board members had actual authority to speak for the school district and if so, whether they purported to exercise that authority on their social media sites.

There are significant distinctions between the two cases.  First, Mr. Freed was an executive, who had authority to make independent decisions. He could announce such a decision on social media. But Respondents/Appellants were members of a legislative body. Legislators have no authority to act independently.  They could not

legally take any official action on social media or anywhere else outside of a properly noticed meeting.

Second, these two trustees set up their social media accounts as campaign sites to advance their efforts to run for office and to be reelected. The evidence shows that they were never authorized to speak for the school district on these social media sites and did not purport to be speaking for the district when using their sites. But Mr. Freed was appointed, so he was not campaigning, and he used his site on occasion to answer public questions. The Supreme Court found that evidence ambiguous and remanded the case for a determination using the new rule. On the much less ambiguous evidence in this case, the Court must determine these two trustees were acting privately, within their rights, and reverse the decision of the District Court.

## II. ANALYSIS

### A. The *Lindke* Rule Requires "Actual" Authority

In the *Lindke* case the Supreme Court held, "A public official who prevents someone from commenting on the official's social-media page engages in state action under § 1983 only if the official both (1) possessed actual authority to speak on the State's behalf on a particular matter, and (2) purported to exercise that authority when speaking in the relevant social-media posts." *Lindke*, supra, 601 U.S. at 187. The Supreme Court added the word "actual" in the first prong of the test of authority for emphasis. "[T]he presence of state authority must be real, not a mirage." *Lindke*, supra, at 199. The Court said "[a]n act is not attributable to a State

unless it is traceable to the State's power or authority." *Id*. at 198. The Court explained that "[s]tatutes, ordinances, and regulations" are "written law through which a State can authorize an official to speak on its behalf," and that "[c]ustom and usage" are "'persistent practices of state officials' that are 'so permanent and well settled' that they carry 'the force of law.'" *Id*. at 200. The Court admonished that "[d]etermining the scope of an official's power requires careful attention to the relevant statute, ordinance, regulation, custom, or usage," and that "courts must not rely on "'excessively broad job descriptions'" to conclude that a government employee is authorized to speak for the State"; "[t]he inquiry is not whether making official announcements could fit within the job description; it is whether making official announcements is actually part of the job that the State entrusted the official to do." *Id*. at 200-201. Relatedly, and most importantly, the Court held that "[t]he appearance and function of the social-media activity … cannot make up for a lack of state authority," *Id*. at 198 — the State "cannot 'fairly be blamed' for the way" an official speaks on his page unless the State "entrust[ed] [him] with the[] responsibilit[y]" to do so. *Id*. at 199.

1. **These Board Members Did Not Possess "Actual Authority" to speak on the School District's Behalf**

   a. **Members Have No Statutory Authority Outside of a Meeting**

The first question is whether Appellants/Defendants Michelle O'Connor-Ratcliff ("O'Connor-Ratcliff") or T. J. Zane ("Zane") (collectively "Trustees") had "actual authority" to speak on behalf of the Poway Unified School District ("District") on a "particular matter" using their social media sites.

The Court instructed "careful attention to the relevant statute, ordinance, regulation, custom, or usage" in determining the actual authority of a public official. *Lindke,* supra, at 200. California statutes sharply limit the authority of school board members.

An executive officer, like Mr. Freed, could make an independent decision within the scope of his authority and immediately report that decision as his action on social media. But members of a legislative body have much more limited authority. They cannot act alone. "The governing board shall act by majority vote of all of the membership constituting the governing board." Cal. Ed. Code, § 35164. "Every official action taken by the governing board of every school district shall be affirmed by a formal vote of the members of the board. . . ." Cal. Ed. Code, § 35163. The governing board is assigned the authority to communicate with the public. "The governing board of any school district may: . . . Inform and make known to the

citizens of the district, the educational programs and activities of the schools therein." Cal. Ed. Code, §35172, subd. (c).

The California Open Meeting Law ("the Brown Act," Cal. Gov. Code, § 54950 et seq) sharply limits the actions of members of the boards of local agencies. They cannot act outside of a properly scheduled public board meeting. Cal. Gov. Code, §§ 54951, 54952, 54952.2, 54952.6, 54953, and 54954.) Section 54952.6 defines "action taken" as a "collective decision." Consequently, an individual school board member cannot take any action alone. There cannot be an *implied* authority for an individual board member to take action on their social media page.

Similarly, California case law holds that an individual board member has no authority to enter into a contract without formal approval or ratification. *Santa Monica Unified School District v. Persh*, 5 Cal. App. 3d 945, 952 (1970); *El Camino Community Coll. Dist. v. Superior Ct.*, 173 Cal.App.3d 606, 616-617 (1985). The public policy against individual action by a trustee is so strong that persons dealing with a school district are "chargeable with notice of limitations on its power to contract." *Id.*; see also *Miller v. McKinnon*, 20 Cal.2d 83, 89–90 (1942) (contracts made in excess of a public agency's power are void and the contractor acts at his/her peril and cannot recover payment for the work performed).

The law requires the District, not the individual board members, to post public information. The Brown Act requires the District to post meeting dates and time and

the agenda, among other information.  Cal. Gov't Code §§ 54954.2, 54956. There are other requirements for the District to post information.  See, Cal. Gov't Code § 53908 (annual compensation); Cal. Ed. Code §§ 221.6, 221.9 and 221.61 (Title IX); 34 C.F.R. § 106.8(b)(2) (Title IX coordinator); 34 C.F.R. § 106.45(b)(10) (grievance process).  If a Trustee posted the board agenda or announced the date of a meeting on their social media page, that posting can only be viewed as an individual campaign promotion or a courtesy to the public, not as an official act.  If a Trustee repeats or shares information available elsewhere, as the mayor did in the High Court's example, by linking to the parking announcement on the city's webpage, "it is far less likely that he is purporting to exercise the power of his office.  Instead, it is much more likely that he is engaging in private speech 'relate[d] to his public employment' or 'concern[ing] information learned during that employment.'" *Lindke* , supra, 601 U.S. at 203.

To try to show actual authority, Plaintiffs/Appellees cited several cases on policymaker liability under section 1983, but the cases were not helpful, first, because they did not distinguish between executives and legislators. Moreover, cases on individual liability for retaliation are not helpful in determining whether an official has "actual" authority or instead is speaking privately.

An example of the cited cases is *Jett v. Dallas Independent School District*, 491 U.S. 701("*Jett*").  Plaintiffs/Appellees Supplemental Brief, p. 9. In *Jett*, a white

employee sued a black Principal under section 1981 after he was transferred to another school, in part because of statements the employee made to the press. An official can retaliate against an employee without any authority. That case was not about whether the Principal had "actual" authority to speak.

The "careful attention" required by *Lindke* to the statutory and customary authority for individual school board members leaves no basis in California law to argue the law provides "actual" authority for a school board member to act alone in any type of official communication. Therefore, the issue shifts to the question whether the District took some formal action to authorize these two Trustees to act for the District on their social media pages.

### B. The District Did Not Authorize Them to Speak for It

The District controlled its communications and did not control the Board member's communications. The District hired a spokesperson as the Director of Communications who was responsible for "planning, developing, coordinating, and implementing communications and public relations activities for the District." 4 ER 736-737. The Director of Communications is responsible for "overseeing the maintenance of the District's social media pages. . . " 4 ER 737. "The District does not have any authority over what social media pages its Board members create." *Id*. "The District does not regulate and/or maintain and/or have any control over any of

11

its Board member's social media pages." *Id*. The District does not spend any money on the Board member's social media pages. *Id.*

The District adopted Administrative Regulation 1114 ("AR1114") to control social media communications. 6 ER 1301. That Regulation defines "Official district social media platform" as a "site authorized by the Superintendent or designee." The Regulation says sites containing "content related to the district or comments on district operations" that have not been authorized by the Superintendent or designee, "are not considered official district social media platforms." *Id*. The Regulation requires each official district social media platform to "prominently display" several items of information. Both of the Trustees have stated that their sites did not contain the statements required by the Regulation for official sites. 4 ER 738-739 [Zane]; 4 ER 742 [O'Connor-Ratcliff]. Therefore, their sites were not official District sites.

The Plaintiffs/Appellees, misquote the District's bylaws as offering "actual" authority to the Trustees, arguing incorrectly that the bylaw requires "members" to ensure "that the district is responsive" and "involve[s] the community." Plaintiffs/Appellee's Supplemental Brief, p. 11, citing *Garnier v. O'Connor-Ratcliff* (9th Cir. 2022) 41 F.4th 1158, 1172, ftnt 9. But that Bylaw requires the "Board," not the individual "members" of the Board, to take those actions. BB 9000(a) https://perma.cc/A3EH-7JYW. The word "members" is not in BB9000a. And they omit the statement respecting the individual board member's right to personal

12

opinions. *Ibid*.  They also omit the section that says, "to ensure communication of a consistent, unified message regarding district issues, Board members are expected to respect the authority of the Board to choose its representatives to communicate its positions and to abide by established protocols."  *Id*.  The Bylaws do not provide any evidence the Trustees had actual authority to speak for the District.

The District adopted policies and regulations to govern communication with the public.  Board Policy BP1100, BP1112, BP1113, BP1114; Administrative Regulation AR1113, AR 1114, https://4.files.edl.io/37e4/05/25/23/153223-6e3d46a8-3f82-49fe-b98e-a9f098e40f04.pdf .  These Board Policies were not in the record from trial.  But the reference to the Bylaws by the Plaintiffs, and this Court, require consideration of the District's entire plan for public communication.  AR 1114 is in the record at 6 ER 1301.

The District's Policy assigns the responsibility for communication to the Superintendent or designee. "The Superintendent or designee shall provide the Board and staff with communications protocols and procedures to assist the district in presenting a consistent, unified message on district issues." BP1100(a).  The Regulation authorizes the District media site and limits the authority of other media sites.

> *Official district social media platform* is a site authorized by the Superintendent or designee. **Sites that have not been authorized by**

**the Superintendent or designee** but that contain content related to the district or comments on district operations, such as a site created by a parent-teacher organization, booster club, or other school-connected organization or a student's or employee's personal site, **are not considered official district social media platforms**.

AR1114(a), https://4.files.edl.io/37e4/05/25/23/153223-6e3d46a8-3f82-49fe-b98e-a9f098e40f04.pdf .

To be a valid, actually authorized, District media site requires approval by the Superintendent or designee. The two Trustees' media sites were not approved by the Superintendent or designee.

There is no evidence in the record to even imply that the District gave any authority to these two Trustees to speak on its behalf about any matter. To the contrary, the evidence from the Director of Communications that the District did not regulate, maintain or control the Trustees' social media sites, is strong evidence there was no "actual" authority. The Bylaw and Board Policies also indicate a District focus on District control of its public communication. Consequently, the state of the evidence in the record is that the District did not provide "actual authority" to the two Trustees to speak for the District.

But at trial, the question about "actual" authority was not directly asked, because the rule in *Lindke* was not in focus at trial. If the Court has any question

14

about the "actual" authority, then remand for further hearing directly on that question, and on the issues of "actual" authority raised by the references to the District's Bylaws, adopted Policies and Regulations, would be appropriate.

### C.     These Trustees Created These Sites before They Were Elected.

These Trustees both testified that they created their social media pages when they decided to run for office. 7-RT-1511, 1653-1654. They certainly did not have "actual authority" from the District before they were elected. They put them up as campaign sites to support their candidacy for the office of school board member. 4-ER-738-739, 741-743. They testified that once they were elected, they continued to use the sites to promote their personal actions as a part of their candidacy for the next upcoming term. 7-RT-116, 129, 130-131. The Trustees always intended the sites to be campaign sites. Both testified they never intended to use the sites for two-way communication. 7-RT-1613-14, 1616, 1630-31, 1651, 1657, 1668.

The argument can be made that the District might have taken action after the campaign sites were created to convert them into authorized official channels, but there is no evidence in the record to support that argument, and evidence from the Director of Communications that the District had its own channel, and did not regulate, maintain or control the Trustees sites, is strong evidence the campaign sites were not converted by the District.

In *Lindke*, the High Court said, "[t]he inquiry is not whether making official announcements could fit within the job description; it is whether making official announcements is actually part of the job that the State entrusted the official to do." *Id.* at 200-201. Consequently, applying "careful attention to the relevant statute, ordinance, regulation, custom, or usage" (*Lindke,* at 200) shows there is no basis in the law, policy, or custom indicating the District entrusted these two Trustees with "actual" authority to make official announcements as part of their jobs. That conclusion should end the inquiry in this case with the first prong of the *Lindke* test. But Plaintiffs/Appellees made arguments about the second prong of the test that should be addressed.

### D. The *Lindke* Rule Requires Evidence the Trustees "Purported" to Exercise Authority from the District

The first prong of the Lindke test asks whether the official has "actual" authority; the second prong asks whether the official "purported to exercise that authority when speaking in the relevant social-media posts." *Lindke* at 187. Plaintiffs/Appellees argue this Court "already fully addressed" the second prong, pointing to the analysis in *Garnier v. O'Connor-Ratcliff*, supra, 41 F.4th at 1171. Plaintiffs/Appellee's Supplemental Brief, p.5. But that part of the Court's analysis was the inquiry whether the material in the social media sites was sufficiently official to be "state action" under section 1983. The analysis whether the action was "official" goes to the first prong, not to the second. This Court did not analyze the

16

requirements necessary to find that an official "purported" to exercise authority when speaking for the District.

In *Lindke*, the Court discussed several different hallmarks for posts that purported to exercise authority. None apply here:

- **Fulfill Legal Responsibilities**

"Generally, a public employee purports to speak on behalf of the State while speaking in his official capacity or when he uses his speech to fulfill his responsibilities pursuant to state law. If the public employee does not use his speech in furtherance of his official responsibilities, he is speaking in his own voice." *Lindke*, supra at 201 (Punctuation and citations omitted). It was established *infra* that California law does not provide a duty to these Trustees to speak, and on the contrary, limits their authority to act alone. There is no evidence the District made them responsible to speak. Consequently, the Trustees did not have a duty to speak and were not fulfilling any responsibility. They were speaking in their own voice.

- **When an Account Belongs to a Political Subdivision**

A social-media account purports to speak for the government "when an account belongs to a political subdivision or is passed down to whomever occupies a particular office. *Lindke*, supra, at 202. Neither of those apply here.

- **Designates the Space as an Official Channel**

An "official who designates space on his nominally personal page as the official channel for receiving comments on a proposed regulation" purports to speak officially. *Lindke*, supra at 202, ftnt 2. The use of the word, "official" must be viewed carefully. A purely private political campaign site would likely be labeled as the official site of the candidate. That would not make it the official site of the state agency. Zane called his campaign site "@ZaneforSchoolBoard," and called it "the official page for T.J. Zane, Poway Unified School District Board Member." 4-ER-642. He did not call it the official page for the District. There is no designation on any of the pages of either Trustee that would even imply the pages purported to be official channels for the District.

- **Expressly Invoked Legal Authority**

A site that expressly invokes legal authority "purports" to exercise some authority. To contrast official action with private action, the High Court offered a hypothetical "from the offline world" in which a school board president announced "at a school board meeting that the board has lifted pandemic-era restrictions on public schools. The next evening, at a backyard barbecue with friends whose children attend public schools, he shares that the board has lifted the pandemic-era restrictions." The first action at the meeting is official state action, but the report at the barbecue is private action. "While the substance of the announcement is the

same, the context—an official meeting versus a private event—differs. He invoked his official authority only when he acted as school board president." *Lindke* , supra, at 201–202. There is nothing on any page in the record with any act invoking authority.

- **Content with Immediate Effect or Not Available Elsewhere**

The Court described an executive making an announcement exclusively on his Facebook page that, "'Pursuant to Municipal Ordinance 22.1, I am temporarily suspending enforcement of alternate-side parking rules.' The post's express invocation of state authority, its immediate legal effect, and the fact that the order is not available elsewhere make clear that the mayor is purporting to discharge an official duty." *Lindke*, supra at 203. On the other hand, if the executive merely repeats or shares information that is available elsewhere, "for example, by linking to the parking announcement on the city's webpage—it is far less likely that he is purporting to exercise the power of his office. Instead, it is much more likely that he is engaging in private speech 'relate[d] to his public employment' or 'concern[ing] information learned during that employment.'" *Id.*

The pages in the case at bar look more like the second example where the posts are private speech related to their public employment or concerning information learned during that employment. None of the posts in the record invoke legal authority, have immediate effect, or are unavailable elsewhere. Some of the

post report school site visits. While those may not be available elsewhere, they do not constitute any kind of action, just a report of activity, and those site-visit posts are beneficial campaign posts. Moreover, as outlined above, these two members of a legislative body did not have any independent legal authority to take any action, and certainly not one that would have immediate effect.

- **Appeared on a Page Staff Could Access**

An official "who uses government staff to make a post will be hard pressed to deny that he was conducting government business." *Lindke*, supra at 203. The Director of Communications said, "The District does not regulate and/or maintain and/or have any control over any of its Board member's social media pages." 4 ER 737. There is no evidence that either Trustee ever used staff to make a post on any of their social media pages. "No employee of the District, other than myself, has had any control or access to my campaign page." 4 ER 739 [Zane]; 4 ER 742 [O'Connor-Ratcliff].

The record shows that neither Trustee purported to be speaking for the District. They created their social media pages as campaign sites when they decided to run for office as a District Board member. 7-RT-1511, 1653-1654; 4-ER-738-739, 741-743. Once elected, they continued to use the sites to promote their personal actions as a part of their candidacy for the next upcoming term. 7-RT-116, 129, 130-131. "After I was elected to the Board, I continued to use my campaign page to

portray myself in the most positive light possible and to further my campaign efforts for the next election cycle." 4 ER 739 [Zane]; 4 ER 742 [O'Connor-Ratcliff].

O'Connor-Ratcliff testified that she intended her site to be "a bulletin board" where "I was informing people what I was up to." 7-RT-1651:15-16. Her intent was "pushing out information." 7-RT-1657:11.

Zane testified his site was intended to be a bulletin board. 7-RT-1613:10-12. "Well, from the very beginning, I established the features on it such that, again, only I would be able to post original posts to the page. My intention was just to show my activity." 7-RT-1613: 14-17.

When they learned that Facebook had introduced a method of "filtering" comments to their sites, they used those filter controls to eliminate every possible comment. 7 ER 1598-1601[Zane]; 7 ER 1644-1649 [O'Connor-Ratcliff]. The use of word filters had the intent of blocking every comment for everybody. That is evidence both of these Trustees did not intend to use their individual campaign sites as official media and did not purport to use them officially. They were intended as personal campaign sites.

### III. CONCLUSION

Applying the test from the *Lindke* case, the Court should conclude the two Trustees did not have actual authority to speak for the school district under the first prong of the test, so that there was no state action, and reverse the decision. If the

Court has any concern about any lack of evidence on either prong of the test for state action, the Court is respectfully requested to remand the case to permit the District Court to take additional evidence on the questions of actual authority or the use of any authority.

ARTIANO SHINOFF

Dated: August 23, 2024                    By _Jack M. Sleeth Jr._
                                              Daniel R. Shinoff
                                              Jack M. Sleeth Jr.
                                              Attorneys for Defendants/Appellants

## IV.    CERTIFICATE OF WORD COUNT

The text of this brief consists of 3997 words as counted by the Microsoft Word version 2013 word processing program used to generate the brief.


                                         ARTIANO SHINOFF


Dated:  August 23, 2024                  By: *Jack M. Sleeth Jr.*
                                             Daniel R. Shinoff
                                             Jack M. Sleeth Jr.
                                             Attorneys for Defendants/Appellants

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 21-55118 and 21-55157

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

DEFENDANTS'/APPELLANTS' ANSWER BRIEF ON REMAND

**Signature** | /s/ Nopealey Lay | **Date** | 08/23/24

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                                 *Rev. 12/01/2018*